Good morning, Your Honors. Michael Honks from the Department of Justice on behalf of the Commissioner of Internal Revenue. We submit that the tax court in this case erred in granting summary judgment to the taxpayers in the face of disputed issues of material fact and without even addressing the primary argument that the Commissioner raised in the briefing below. Mr. Honks, let me ask you the question Judge Ferris normally asks, and I'm going to apologize to her in advance. What do you want us to do? Vacate and remand, very simply. We did not cross-move for summary judgment. Frankly, we think this is just an issue that the tax court, with all due respect to that court, just missed in the shuffle of many similar cases, and we think that they should consider the issue in the first instance. It's a very fact-intensive issue. Are there disputed facts with respect to this issue? Yes, very much so. And it revolves around basically the role of Mr. Fawcett in the transactions that occurred. The notice of final partnership administrative adjustment, or FPAI as we call it, that the Commissioner issued made a finding that Mr. Fawcett did not really buy an 80 percent share of the partnership, as is alleged by the partnership, that that was a sham for tax purposes and ought to be disregarded. And if he was not an 80 percent owner, that means that Beverly and Nelson Clark omitted an enormous amount, over $10 million, of the sales proceeds in March of 2000 when they sold their business. It really turns upon whether or not he was legitimately a partner or not, and the related issues of who owned what share of the partnership and that sort of thing. And that is a fact-intensive issue and was not addressed by the court below. I'm just trying to understand the procedural context of this case below. There was a motion for summary judgment. Correct. Did the motion for summary – but there was no motion on this second issue, on the issue you're now addressing, the sham transaction? Correct. The motion really did not address that issue. Okay. But did the tax court judge know this was that issue? In other words, was this a mistake, or did the parties just not alert the tax court judge that there was a sham? The Commissioner certainly alerted the tax court judge. Wasn't a substantial part of your brief addressed to it before the tax court? Oh, yes. A very substantial part of our brief. And that was in defense of the summary judgment motion? Correct. In defense of the summary judgment motion. Yes. And did anybody go back to – I mean, it doesn't make any difference for our jurisdiction. You don't have to file a motion for a new trial or for re-hearing. Would anybody go back to the tax court judge and say, oops, you missed this one? Regrettably, no. And you're right. That's not jurisdictional. Honestly, I wish they had. I think it would likely have been granted. There was a similar case pending before a different tax court judge, C&T Investors, in which the IRS counsel did immediately move for reconsideration or whatever it's called in the tax court. And Judge Werry granted that with apologies and said, yes, I missed this issue, I'm sorry. And the case went to trial, and it's still pending. So I take it if we were to ask you to address the second issue today, you would say, well, there are disputed facts about that issue, and so I need to go back and prove them. Exactly, yes. There really isn't enough in the record. We're not – we never asked for summary judgment in our favor, and I suspect it's the kind of issue that would not even be – well, perhaps I shouldn't say that. Well, the facts could be undisputed, but they're not. Correct. And the other side, among other things, says, but the legal issue that wasn't addressed, in order to win on that, you're raising a novel legal theory that's never been adopted by any court. Maybe I'm misstating what they said, but is that right? That may be what they said, but it's definitely not correct. I'd say what we're addressing here is really the classic theory of an omission from gross income. I mean, maybe I can take two minutes or so to – I don't know how familiar you are with history. The reason for my question is, you know, if we remand because they're factual findings, but there's no way in the world that you're ever going to win because the law is 100 percent against you, why bother? We don't think the law is 100 percent against us. On the contrary, we think that if we win on the facts, we should win under the law here, and that it's pretty clear under 6501E1 that this was a substantial omission from gross income. And I take it – and it would be helpful, I think, to me if you did admit it or two of the facts, but I take it your essential argument is that the note, promissory note given to Mr. Fawcett in 1999 wasn't real. There was no intention that anybody pay it off or anything like that, and therefore the transaction that occurred in 2000 should be viewed without respect to anything that occurred in 1999. Exactly, as if he had never entered the picture. They were in negotiations to sell their business. They had, as of, I don't know, early or mid-December of 1999, actually struck a deal, at least in principle, with a group of investors who formed this corporation called Maplewood to buy their business. And after actually agreeing to the sale of it, then Mr. Fawcett entered the picture, and they supposedly sold him an 80 percent interest in the partnership. So the timing is a little strange. If you're about to sell your business to somebody else, why would you bring in a new partner and give him 80 percent of the business? He gave a promissory note, no money changed hands, and then when the business was sold about three months later, his share of it coincidentally was almost exactly the same amount as his promissory note, so it all canceled each other out without any money ever changing hands. So that in and much of the service says that this should be disregarded for tax purposes. Judge Friedman asked you, and I think he accurately represented what the other side said, that this is a novel legal theory never adopted anywhere, since there have been a whole bunch of these cases in front of the tax court. Has the tax court ever adopted this theory? Well, they were factually very different. There were a whole bunch of cases in front of the tax court and in front of some of the district courts. A whole bunch is a legal term, I understand. Yeah, and they went to the Supreme Court ultimately in a case called Home Concrete. I would refer to this group of cases as the Home Concrete line of cases. The factual similarity between all of those cases was a taxpayer would sell an asset, would accurately report on the return what they sold it for, but would inaccurately report their basis in the asset. And that would, of course, lead then when they had to do the subtraction and state what's their capital gain or capital loss, it would be a, in our view, drastically understated capital gain. And that's, in 1999, the taxpayer here did report a sale on the asset, right? Right. And if the, this is the Commissioner's sort of fallback argument, that if the Fawcett Trust, if that sale to Fawcett is respected for tax purposes, then they would have, the Commissioner would be relying on this other theory, the Home Concrete sort of theory. But that's now been foreclosed to you, right? Yeah, exactly. That's been foreclosed by the Supreme Court. So your original theory was it's the 1999 trend. We can start from a 1999, from an understatement of basis, I'm sorry. And now your theory is we're going because of an understatement of tax liability. Exactly. Without regard to basis understatement. The Supreme Court ultimately held in those cases that as long as the taxpayer has put the amount of the sale on the tax return, the fact that the basis was understated might be misleading, but it doesn't fall within the terms of an omission from gross income. And so we're saying, okay, we concede, and regrettably we had to concede a couple dozen of those cases, but this one is different because they actually didn't put the right number on the tax return as to the amount of the sale. If we disregard the sale to Fawcett as a sham, which is what the Commissioner wants to do, that's a factual issue that has to be resolved by the tax court in the first instance, and that's why we ask that you vacate and remand the case to the tax court. All right. What about the question that they raised, that you can't rely exclusively on the, whatever it's called, the FPA? The FBA, yeah. That you can't rely exclusively on that to raise a genuine issue of material fact and that you really didn't do anything to dispute their paragraph 11 of their allegedly undisputed facts and therefore you lose because the burden is on you to show the six-year statute. Well, first I would say they didn't introduce any facts. They're undisputed facts. I mean, first of all, they were addressed really to a different legal theory, which I think is why they didn't cover this. They say nothing about Fawcett, for example. They're now trying to hang their hat on paragraph 11 because it's a very conclusory statement that essentially says the FPA is wrong, but they don't introduce any evidence. They cite something in the complaint, and they say we admit it in the answer, but when I read the answer, it looks to me like we actually denied it. But in any event, they didn't put in any evidence. They didn't put in, well, there wasn't discovery, so there wouldn't have been depositions. There's no declaration. They don't have a declaration from the taxpayers. They don't have a declaration from Fawcett. So I'd say, first of all, they didn't really demonstrate the absence of material facts. Yes, it's true. We didn't put in evidence in response to it, but there was sort of nothing to respond to. And then additionally, the FPA is a little bit different than some things. It's not just an allegation. It represents a finding by the Commissioner of Internal Revenue after an audit. It's similar to a notice of deficiency in that regard, and we cite a case called Seely Power from the Fifth Circuit, and there's others out there that say it's entitled to a presumption of correctness. It's not irrebuttable, certainly, but the ball starts off in the taxpayer's court, so to speak, to prove that the FPA is wrong, and they can't switch that burden of proof by filing a conclusory summary judgment motion that says, no, the FPA is incorrect. Okay, Commissioner, now you've proved that it's correct. That could not be the law. I'd like to reserve. I think it looks like I have about four minutes remaining, if there's no questions at this time. You may. All right. Thank you. Mr. Rather. Good morning, Your Honors. Steve Mather, appearing for the Appellee Beverly Clark Collection. The IRS has a nice, novel, I would say unprecedented legal theory in this case, but the real problem in the case is that they have absolutely no factual basis to support that argument. If you're right, then why don't we just let the tax court tell us that? In other words, they wanted to make the argument. They say they want to make the argument in the first instance to the tax court. We're lazy. That will save us from taking up a difficult and novel argument in the first instance. Why isn't that the appropriate thing to do here? Well, I disagree with the suggestion. I don't mean we're really lazy, but I mean we're prudential. Right. And I guess the tax court was lazy as well and ignored the main argument in the case. But I mean, the fact is, is I've tried lots of cases in the tax court, and sometimes the tax court doesn't address arguments that I think are really neat arguments. And, you know, that's just kind of how how it goes. Well, and I understood why. From that, that they aren't doing their job. But here there was a there was a good reason. The tax court initially was thought that the other theory worked. Right. So the tax court was always against the government's theory on the home concrete theory. In fact, the first case that came to the circuit court level was the Bakersfield Energy Partners. And that happened to be my case. So I'm pretty familiar with that one. And the Ninth Circuit basically said, yeah, that something must be left out of the return for the six year period of limitations to apply. And OK. So paragraph 11 in my proposed statements of pardon me, undisputed fact, this is a little conclusory, but it's based on the pleadings and in a sense essentially the admissions that were done in the plea. Well, but I'm still trying to figure out the tax court. The government makes two arguments. The tax court treats one, but not the second. They now want the tax court to treat the second. Normally, we would ask them to do that. Why wouldn't we do that here? Well, because I don't I think there is there is a de novo review and of a summary judgment. And in this case, there is literally. See, see, the government wants to kind of come up with this grandiose legal theory on how they're going to ignore all of the things that were reported on one return and say, oh, they should should have been on a different return. And therefore, they're omitted from the correct return. But and that is an unprecedented argument. But there's also no factual basis in the documents to allow them to raise that. Because they haven't read. They haven't put in any proof with respect to the. Well, they don't even have the. To the sham transaction. Yeah. See, I'm trying to figure out as your opponent represents it. He thought he says we thought we were doing a summary judgment on the theory that is now no longer available to us. Turns out that turns out the judge never addressed the other argument that we had. We would have liked to have made that argument. We would have brought in different evidence if we thought that issue that that was an issue. So why? Why? Well, what should they have done? What should they have done below that they didn't do? I mean, they I mean, what what they sometimes do, which I don't believe is in the order in this case, they say to the extent other arguments have been made, we've considered them and find. Well, but here. But I mean, that that's essentially what I'm just trying to get this procedurally correct in my mind. You file a motion for summary judgment. Yes. The government response. And they say we should wait on the theory that you you expose. But we have a different theory of the case under which would prevent summary judgment. And it's this sham transaction theory. And the tax court addresses your argument, but not their argument. Is that a fair description of what happened here? Well, I think that's what the paper says. OK. So what should the government have done differently? Putting aside the notion that they don't need to file a motion for a new trial. What should they have done differently below to preserve this novel and perhaps losing argument? Well, I mean, they should have they should have proposed facts that would support the argument. I mean, it's one thing to argue a theory. It's another thing to actually suggest that there is a fact that supports it. And I think one of the one of the telling things is in the excerpts of record on page 251. This is part of the F pause. They call it the government's theory that they argue in their brief is that, well, all this stuff with Fawcett isn't real. It didn't really happen in ninety nine. And so what happened is that the partnership sold assets. In 2000, and they didn't report the sales proceeds and they didn't report the basis. And because, you know, having the basis wrong after home concrete is not is not a problem or not a reason to give them extra time on the statute. But they didn't report the proceeds. OK. So on page 251 of the excerpts, what there needs to be is there needs to be a number in this section here in the top half that where they say there should have been more proceeds reported. So there's not in their FPA even the number upon which they could base their argument. They did not even propose a number which would allow them to factually support their position that they get extra time. So if I can if I can rephrase your position, it's that when confronted with a motion for summary judgment by your side, the government didn't come forth with any disputed facts that would defeat the motion. Right. I mean, what they did is they plunked in the documents, they plunked in the tax returns and the FPA. And they said, OK, these are the documents. But then the documents themselves don't raise don't even assert the theory that they're now saying they get to use to justify a longer period of limitations to make this change. So. So what would have happened if the tax court addressed the tax court could have done a couple of things. The tax court could have said this is a novel legal theory. There's no support for you. Tax court could say this is an interesting albeit novel legal theory. I kind of like it, but there's no facts to support it. The tax court could have said, I'll give you time to give me more facts to put in more evidence because I kind of find this intriguing theory. So why don't we remand it to the tax court and let the tax court figure out what it ought to do with this novel legal theory on this record. Well, I mean, I think there's ample facts in this record from which you can reject that novel legal theory. Whether or not the tax court stated what their reasons were or whether or not the tax court just said, OK, well, there's no basis for this. You know, we don't even have to mention the other theory. The tax court didn't do any of those things, just ignored it. Well, I mean, that's that's I mean, the opinion does not address it. Does that mean the tax court ignored half the brief of each party? But when you review on appeal, we've got to look at the record, don't we? Do we just assume certain things? Well, I mean, you look at you look at the record. But if if if the novel legal theory has no factual basis to it whatsoever, because it's not even proposed, hasn't even proposed a fact and the facts that have been offered don't even support that theory, then I don't know how there can be. I mean, I think it's certainly within the court's authority and prerogative on on appeal. I mean, the tax court didn't consider it. We don't have to consider it. It is perhaps it is our prerogative. But I think we're all asking in one way or another is that shouldn't we exercise a different prerogative? Shouldn't we say to the tax court, this argument was made to you. Perhaps it's a loser. Perhaps there are no facts to support it. Perhaps there's a it's a novel legal theory. But at least in the first instance, you ought to address it. Why shouldn't we do that? I understand. I understand you prefer to win here. But look at it from our perspective. From our perspective, why shouldn't we do that? Well, you know, I well, I don't know how to say it any differently than I have. I think the record that exists below supports ignoring this argument. And that's a major motion for summary judgment. The Bakersfield case was out there in some other cases. But had the Supreme Court just can't remember the chronology of the Supreme Court definitively decided that it agreed with Bakersfield and other decisions. In other words, was it was it was OK. So so the IRS you were relying on that line of cases. The IRS was disputing that line of cases. But now they're left with no argument whatsoever unless either we or the tax court accept their secondary argument. Correct. That's correct. The Supreme Court ruled in the home concrete case after this this decision. But, you know, and just just if I have a few minutes, I just I think I think that really just to kind of provide a further explanation of our position. You know, whatever the issue is or isn't with the Fawcett Trust, I think is largely irrelevant to the issue that's before the court now. And and I think that you can kind of really address the question here. The fundament of the novelty of the legal theory, if you will, by looking at one other page in the excerpts of record. And that's page 52. And on page 52, what we have is this is a part of the 1999 tax return of the Clarks. And so the the important number here, what the government is really after in these case, they may say, oh, we're we're attacking the Fawcett Trust. Well, yeah, they are because they want to they want to make some last ditch effort to keep the statute open. But what they're really saying is that on this 1999 return of the Clarks and on the fourth line in the top half there, on column E, there's a number 10,000, seven, five, eight, six, eight, eight. And what the government's what this case is about when you get down to the bottom line is the government saying that number is too big. That is that number is too big. That shouldn't be because of all these things that they did with this horrible son of boss transaction and these U.S. Treasury notes and all of these things that caused that number to be too big. And so, as I said, I was I was I was arguing the Bakersfield case. And Judge Kleinfeld basically put the government to the task and said, why is it when we have this number, this ten million dollar number? How is that omitted from this return? How does that cause an omission? And the government is that in that argument couldn't come up with a good explanation. And we're not talking about the 1999 return. No, but see, see, see, see. So what you know, the Clarks reported that number and this is the number that the government doesn't like. So when did they report novelty in 99? And the novelty in their argument is there's never been a case where the government has said, OK, we're going to we're going to ignore the numbers on these returns and say, well, but on this 2000 return from the same taxpayer, there should have been similar numbers. And and because because it was we're just going to focus on the 2000 return and forget about everything else the taxpayer has disclosed. And I think it's important because the reason for this statute, the reason that it's there in the first place is and it's cited all through the cases, is that when when the numbers aren't on the return, then the government has a harder time figuring out what how they should change those numbers. And that's why we're going to give them more time. Isn't the government's argument slightly different? And let me just see if I can ask you to respond to it. I take it the government's argument is that there was no omission of taxable income in 1999. But there was an omission of taxable income in 2000 because there wasn't in 1999, even though you reported something, you really didn't know anything at all. Right. Because that transaction, that transaction was a sham. And it was the next year that you really owed something. You being your clients, of course. What the government's position is, again, going back to page 52, is that this 10-758 number and the number next to it, the 10-731, those shouldn't have been on this return. They should have been on the 2000 return. And then we're going to knock out this 10-758 number if it were on the 2000 return. I mean, the real focus of their case is that this 10,000 or 10,000,758 is too high. And your argument is that by reporting this basis before 2000, even though it may have been inaccurate, that any returns thereafter based on that would not qualify as extending the statute. Right. The government is not under any special disadvantage to see what the taxpayer was doing in this case because he did it. He did it. It's on the return. It's what the underpinning of the Colony case is, the Home Concrete, the Bakersfield case, is that when there's numbers on the return and the IRS wants to reduce those numbers, then it's a three-year statute of limitations. If there's numbers that are not on the return, then the IRS is at a disadvantage because how do they know what's not on the return? And so they get more time. And that's the basis of the law in this case, and it doesn't apply here. And that's why this is a novel theory that hasn't been raised because this has never been decided. The IRS has never tried this in another case, shifting from one return to another and calling it an omission over here. It sure would be nice to hear what the tax court thinks about it. All right. Thank you. Thank you. Counsel, do you have some time for rebuttal? Thank you. I think maybe I should begin with Mr. Mather's last point. Yes, he's right. Well, I think what he's saying, to be fair, is that they told you in 1999 that they'd engaged in this transaction. And it's this sort of transaction that you really think is a sham. Why wasn't the IRS on notice from the 1999 return that there was a perhaps improper claim of basis? Well, a couple of answers. One is that that relates to the adequate disclosure safe harbor of the statute, which the tax court hasn't ruled on. That's a fact-intensive question that the court ought to look at if they want to raise that issue and claim that they disclosed it adequately. Secondly, we cited some cases in our brief pointing out that every tax year is considered a separate entity, and the commissioner doesn't have to look between different tax years of a taxpayer in order to figure out what's going on. So to make the disclosure, they have to do it in the 2000 tax year. Something that they disclosed in 1999 on a different return doesn't count. And, in fact, in their 2000 return, they did not put the right number down. That would be excerpt of record page 89, about two-thirds of the way down the page under item number 8. You've got Goodwill, Beverly Clark Collection. They report $2 million. We say they should have reported something like $12 million. So that's an answer to his last point. He also raised something about the FPA itself. He mentioned page 251 and some numbers there and saying that there was not a number on the FPA. The reason is that the asset sale that occurred here, it wasn't actually done by the partnership. It was done after the partnership dissolved. The partnership dissolved in early to mid-March. It distributed all its assets to the partners, and it was actually the partners personally that sold the assets. So that's an adjustment to the partner's return, not to the partnership's return. And in terms of what the FPA said about Fawcett, he actually comes up on page 253 of the excerpts of record, down near the bottom of the page, the paragraph that begins with the letter B, Richard Fawcett should not be treated as being a partner of Beverly Clark Collection, and so forth and so on. Other note that I made here is just I think we've been referring sometimes to the Court not having addressed the Commissioner's second argument. It doesn't particularly matter, perhaps. I think it was your first argument. It's actually the first argument. It's Roman I. The one that it addressed was Roman II, so I just want to sneak that in. But I want to get back to just sort of a technical summary judgment issue. The other side moves for summary judgment, properly supported, at least on the home concrete issue, and then it's your burden because they are going to win on that home concrete issue, we now know, to demonstrate that there's a triable issue of fact that remains on something else. What fact issues did you demonstrate to the tax court that would show that court that there were triable issues of fact on your other theory? We did not put in any affidavits, obviously. We didn't put any true evidence in that sense, and that is absolutely correct. We did, of course, the FPA was in the record, and we maintain that that does have some evidentiary weight that carries a presumption of correctness. And as I've just indicated, that did make a finding, that Fawcett's transaction was a sham with respect to that partnership. And I would submit that that is enough to raise a disputed issue of fact. And certainly the Commissioner argued this point at length in the opposition to summary judgment below. There was an extensive discussion walking the tax court through an explanation of why summary judgment was not proper here. But you didn't file a Rule 56-F affidavit, for example, saying there's other issues we want to conduct discovery on and that summary judgment shouldn't be granted for that reason. No, we did not do that. All right. If there's no further questions, then I think I'll rest, and I thank the Court very much for its time. Thank you. This case will be submitted.
judges: Friedman, Farris, Hurwitz